The People of the State of Illinois, Defendant in Error,
v. Barney Solomen et al., Plaintiffs in Error.

Gen. No. 33,961.

586

Opinion filed May 19, 1931.

THOMAS D. NASH, MICHAEL J. AHERN and JAMES J. McDERMOTT, for plaintiffs in error.

JOHN A. SWANSON, State's Attorney, for defendant in error; HENRY T. CHACE, JR., EDWARD E. WILSON and C. E. LOUNSBURY, Assistant State's Attorneys, of counsel.

MR. PRESIDING JUSTICE SCANLAN delivered the opinion of the court.

The defendants, Barney Solomen, Adolph Abernathy, Frank Harkelroad, William McLarin, Bernard P. Cooney, James Dorsey, Frank Smith, Frank Wittick, Linder Wilkinson and John Huntzinger were indicted for conspiracy and all found guilty by a jury.

Solomen, Abernathy, Harkelroad, McLarin and Cooney were fined $500 each. Dorsey, Smith and Huntzinger were each sentenced to six months' imprisonment in the county jail and fined $500 each. Wittick and Wilkinson were each sentenced to imprisonment for one year in the county jail and fined $1,000 each. Judgment was entered on the verdicts and all of the defendants have sued out this writ of error.

The indictment consisted of six counts. Count 1 charged a conspiracy to make and keep a fraudulent poll list and to aid and abet the judges and clerks of election to fail, refuse and neglect to perform their duties, etc.; count 2, a conspiracy to make a false return and statement of the number of votes cast, etc.; count 3, a conspiracy to open the ballot box and remove ballots therefrom and count ballots not cast by electors, etc.; count 4, a conspiracy to forge and counterfeit the indorsement of the initials of the judges of election, etc.; count 5, a conspiracy to steal

the poll list; and count 6, a conspiracy to steal the official blank ballots and to mark same and to count same, as so marked, as ballots cast by electors, etc. The defendants Solomen, Abernathy and Harkelroad were judges of election, and McLarin and Cooney, clerks of election, and together they constituted the election board of the 11th precinct of the 27th ward of the City of Chicago.

As we have concluded, after a painstaking consideration of the record in this case and the errors assigned, that the judgment of the criminal court of Cook county must be reversed and the cause remanded, and as the case may be tried again, we purposely refrain from analyzing and commenting upon the evidence. We shall therefore mention only such facts as are necessary in the consideration of errors assigned. The poll book of the precinct showed that there were 316 names of voters who were entitled to vote at the election in question. During the progress of the voting on the day of the election the election officials claimed that the ballot box was filled, and one of the defendants rolled a barrel up to the table on which the ballot box was standing and one of the judges then opened the box and the ballots therein were dumped into the barrel. The barrel was then rolled into an "empty voting booth" and the box was then locked, and the balloting proceeded. At the close of the election the ballot box was opened and the votes contained therein were dumped upon the table. The barrel was then rolled to the table by one Shapiro, and the ballots contained therein were also dumped upon the table. A count showed that there were then upon the table 716 ballots. The election commissioners' office was notified of the situation and shortly thereafter several men from that office arrived. Thereafter the work of counting the ballots proceeded and the election officials made returns to the election

commissioners that 716 ballots had been cast. It seems to be undisputed that the men from the election commissioners' office told the precinct election officials that the entire number of ballots found should be counted. That there was an attempt made by some person or persons to violate the election laws was conceded by the defendants. All of the defendants seriously contested the charge made against them and undoubtedly the evidence bearing upon the question of the guilt or innocence of the defendants is conflicting. It is the settled law of this State that where the evidence is conflicting, the record, to sustain a conviction, must be reasonably free from substantial and prejudicial error. It was admitted that some persons conspired to violate the ballot box. Such a conspiracy is akin to treason, as it strikes at the very life of the Republic, and the feelings of all honest men are, naturally, aroused by the very nature of the offense. The defendants earnestly contend that they have not had a fair and impartial trial and that the verdict of the jury is due to that fact alone, and they have argued many points in support of this contention. In our judgment, it is not necessary to refer to all of these.

About 48 hours after the polls closed, the defendants Abernathy, Solomen, Cooney, Harkelroad and Mc-Larin, the precinct election officials, were taken to the office of the election commissioners and there examined, intermittently, during several days, by Mr. Lavery, attorney for the commissioners, concerning the frauds perpetrated at the polling place. The questions put to these defendants and the answers they made thereto were reduced to writing, and during the presentation of the State's case in chief, the State's attorney offered the statements in evidence upon the ground that they contained admissions of these defendants tending to establish their guilt. The defendants objected to the admission of the statements upon a number of

grounds, only one of which we deem it necessary to consider. The arguments as to their admissibility were held in chambers, and counsel for the defendants there pointed out that many of the questions propounded to the defendants by Mr. Lavery, and that were a part of the statements that the State desired to read to the jury, contained charges, opinions, speculations, conclusions, and highly prejudicial insinuations of Mr. Lavery that plainly indicated the belief of the latter that the defendants, or some of them, were guilty, and that to permit such questions to go to the jury would be highly prejudicial to the defendants. The court admitted that certain of the questions would not be admissible under the general rules of evidence, but he stated that the answers of the defendants would be unintelligible without the questions, and that "the jury should be instructed not to give any weight whatever to words of Mr. Lavery, . . . the proper way is to have it explained to the jury, that, of course, anything that Mr. Lavery says . . . is entirely irrelevant and immaterial, and not on any circumstance to be considered." The defendants also objected to each and every question and answer contained in the several statements. The court thereupon, over the objection of the defendants, admitted the statements, including the questions, in evidence, but no cautionary instruction bearing upon the questions of Mr. Lavery was given to the jury. The following excerpts from the statements will illustrate the nature of many questions put to the defendants by Mr. Lavery:

"Q. I do not think you were directly involved in this thing, but I think you have some suspicion that you have not yet told me about, and I want you to tell me that. I want to know if it is not your suspicion there was a deal there between the Republican fellows and the Democratic fellows to swap some of these ballots or swipe some of these ballots and get them

marked somehow or another and put them into the barrel, so they could be counted?

Q. I am of this opinion, I think you did not carefully look into that barrel, and there may have been something in there. Now, that is my idea. I think that you think you looked, but you did not actually look to the bottom of that barrel.

Q. But you looked into the bottom of the barrel that the ballots were sitting on. I am satisfied that you did not look into the bottom of the barrel they brought over there.

Q. I am going to tell you something, I am satisfied that those ballots were in the barrel when they dumped the other ballots in there, and I think you are satisfied now that they were.

Q. Now, listen, the fact that Blank told you that and that he said Blank had been there and fixed it all up, you went back there at seven o'clock convinces me that you suspected something, and you won't tell me what it was.

Q. I just wanted to get what your attitude of mind was, whether there was a circumstance that had happened that had made you suspicious of some effort to get it and that you put it in the drawer for that purpose, because ordinarily you would leave it on the table.

Q. I am not trying to surprise you, Barney, you are a pretty clever fellow and you know your way around, and you have a good memory. You are sure. I understand, you can't remember a particular thing in that hullabaloo. I want you to recall, as near as you can, about that polling book and whether you actually put them in the drawer. Your recollection a while ago was that you did.

Q. Let us be accurate about it. You know the God's honest truth about it.

Q. And there was no 'shenanigan' about that; it was all square?

Q. I want to find out what happened about that. When you had the ballots put from the ballot box into the barrel, in the first place I suppose the ballot box was there, put on the table temporarily or on the floor until you got another table, something before that, something that had the barrel that had the ballots?

Q. You are sure there was no 'shenanigan' up to that time?

Q. It is an inconceivable situation with forty people that those three judges, three blanks, aren't going to raise hell if those books don't show up?''

The election commissioners were fully warranted in making a thorough investigation of the outrageous frauds that had been committed in the precinct in question, and we have no criticism to make of the manner in which Mr. Lavery interrogated the election officials. He would have been derelict in his duty had he not thoroughly and effectively examined these officials, but it is apparent that many questions and statements he made to the defendants were not competent evidence against them in the present proceeding. The trial court, during the trial, and counsel for the State, in this court, justify the introduction of the questions that are objected to, upon the ground that the answers of the defendants to the questions would be unintelligible without the questions; that the answers would mean nothing without the questions. The counsel defend many of the questions admitted solely on the ground of necessity. Necessity never excuses incompetent and prejudicial evidence. In many of the so-called questions Mr. Lavery merely gave his opinions, suspicions and speculations, as to what had occurred at the polling place. Many of the questions did not call for an answer, and frequently the answers to questions tended only to exonerate the party questioned, so that there was no basis for admitting these improper questions on the theory that they constituted admissions tending to prove the guilt of the party exam-

ined. It was the duty of the trial court to have deleted from the questions the incompetent and improper portions of the same, where that could be done. Where the entire question was improper, the objection to the same should have been sustained. It is clear that the trial court erred in permitting many of the so-called questions of Mr. Lavery to be read to the jury, and who can say, with reasonable certainty, especially in view of the fact that no cautionary instruction bearing upon the questions was given, that the jury did not attach weight to the opinions of the attorney for the election board touching the frauds in question?

During the closing argument of the State's attorney, the following occurred: "Mr. Coughlan (assistant State's attorney): Smith was employed as a bailiff for a great number of years, no one appears here, no one appears from the Hartman Furniture Company, no one testifies in behalf of these parties as to their character or reputation. Mr. McDermott (attorney for defendants): If the Court please, that is objected to, and I move to withdraw a juror and continue the case for that statement. The Court: Objection overruled. Mr. McDermott: Exception. To which ruling of the Court, the defendants, and each of them, by their counsel, then and there duly excepted. Mr. Coughlan: I will ask leave to withdraw that statement. The Court: Let me hear the statement. (Statement read.) The Court: That you object to? Mr. McDermott: Yes, Your Honor. Mr. Coughlan: I will ask to withdraw that, if the Court please, and ask the jury to disregard it. The Court: All right, the jury will disregard it." The defendants strenuously contend that this conduct of the State's attorney constituted reversible error. In *People v. Haas,* 293 Ill. 274, 276-7, the court said:

"Plaintiff in error contends that the State's attorney in his closing argument committed prejudicial

error by commenting on the fact that plaintiff in error had not submitted testimony of previous good character, it being contended that the presumption of previous good character obtains, and it was error on the part of the State's attorney to comment on the fact that there was no evidence offered on that point by the defendant. This question has not been passed upon in this State nor are the cases in harmony in other States. . . .

"It is well settled in this State that a defendant's character is presumed to be good until the contrary is proven, and that no evidence to impeach character is admissible against the accused until he has opened the door for such evidence by adducing proof of good character. In the trial of a criminal charge, where the character of the act depends largely upon the intention which prompted it, the character of the accused becomes important in determining guilt. There is no duty on the part of the defendant to offer proof of good character. He may do so, but until he does the State has no right to offer proof on that subject. The plain meaning of this rule is that the reputation of the defendant as a law-abiding citizen cannot be attacked until he opens the door by offering proof of good character. It follows that the State's attorney has no right to call to the attention of the jury the defendant's failure to offer such proof, or to argue that the lack of such proof tends, under the facts of the case, to overcome the presumption of good character."

The State concedes that the statement of the State's attorney constituted error, but it contends that the action of the State's attorney in withdrawing the statement and the action of the court in stating that "the jury will disregard it," cured it. It must be noted that when the counsel for defendants objected to the statement and moved to withdraw a juror and continue the case, the trial court overruled the objection

to the statement, thereby, in effect, sustaining the right of the State's attorney to make the statement. The court's language, in passing upon the State's attorney's motion to withdraw the statement, did not cure the effect of that ruling. The statement of the State's attorney implied that the defendants had the right to offer evidence as to their character and reputation. While they had the right to offer evidence, if they saw fit to do so, as to their reputation, they had no right to offer evidence as to their character. The defendants were charged with one of the most serious offenses known to the law. As the number of ballots found in the box and the barrel when the polls were closed was approximately 400 more than there were registered voters, the fraud was certain of discovery, and the jury may well have concluded that the defendants, who the State's attorney had intimated were men without good character or good reputation, were more likely to have committed the offense charged than men of good character and of good reputation. We cannot escape the conclusion that the statement of the State's attorney had a strong tendency to prejudice the defendants.

During the argument of the same State's attorney the following occurred: "Mr. Coughlan: Now, in conclusion then, considering the defense testimony, you have only the testimony of Abernathy, offered by way of defense of himself. The other testimony stands unanswered. Mr. McDermott: If the Court please, that is objected to. Will you read that? The Court: That is purely argument. Mr. McDermott: He has no right to comment on the failure of any defendant to take the stand. The Court: That is not erroneous. To which ruling of the Court, the defendants, and each of them, by their counsel then and there duly excepted." The defendants contend that the statement of the State's attorney and the action of the court in

passing upon the objection to the same constituted reversible error. None of the election officials save Abernathy testified, and the defendants contend that the above statement was plainly intended to call attention to that situation. We do not deem it necessary to pass upon the contention in so far as it bears upon the statement of the State's attorney, but we think that there is merit in the argument that the language of the trial court in passing upon the objection is justly subject to the criticism that a jury would imply therefrom that the State's attorney had the right to call attention to the fact that some of the defendants had not testified.

The defendants contend that the court erred in giving, at the instance of the State, the following instruction:

"The Jury is instructed that two, three or more persons indicted for conspiracy may be convicted, and others acquitted, if the facts proved by the State warrant such a verdict; but in this connection you are instructed that, in order to bring in a verdict of guilty, you must find from the evidence that at least two, or more, of the defendants did conspire together in the manner and for the purpose charged in the indictment or in one of the several counts thereof."

The instant contention is undoubtedly a meritorious one. The instruction authorizes a conviction "if the facts proved by the State warrant such a verdict," thereby ignoring entirely the testimony offered for the defendants. In effect, it told the jury that they should convict or acquit on the case made by the State alone. It assumes that the State has proven certain facts, and the jury are only called upon to determine whether or not these facts were sufficient to make out a case of conspiracy. It ignores the essential element that the jury must find from the evidence *"beyond a reasonable doubt"* that two or more of the defendants

conspired, etc. The instruction is otherwise bad and the giving of it constituted serious error.

The defendants contend that the court erred in giving, at the instance of the State, the following instruction:

"The Court further instructs the jury, as a matter of law, that if, from the acts of the parties as proven and from all the facts and circumstances in evidence, the jury believe beyond a reasonable doubt that the defendants, *or some of them,* did pursue the common object alleged in the indictment, or any of the several counts thereof, as charged in said indictment, and by the same means, one performing one part, and another, another part, so as to accomplish the common object, the jury will be justified in the conclusion *that the defendants* were engaged in a conspiracy to effect that object." (Italics ours.)

It is clear that the instant contention is a meritorious one. The instruction authorizes the jury to conclude that all of the defendants were engaged in a conspiracy, if they believed from the evidence that the defendants *"or some of them"* were engaged in a conspiracy. All of the defendants that were tried were convicted, although the State's principal witness, August Scholz, who testified that he took an active part in the conspiracy, stated that the defendants Cooney, McLarin, Harkelroad and Solomen were not present and took no part in the preliminary actions of the conspirators and had nothing to do with the marking of the ballots the night before the primary. As we have heretofore stated, we do not wish to analyze and comment on the evidence in the case, but for the purpose of passing upon the instant contention we may say that the jury, under the evidence, would not be subject to just criticism if they had found some of the defendants not guilty.

The defendants contend that the court erred in giving, at the instance of the State, the following instruction:

"The court further instructs the jury that one method of impeaching a witness is by showing that he has made statements out of court at variance with statements on the witness stand, and if the jury believe from the evidence that any witness in this case has made statements·at any other time or place at variance with his evidence in this case, you have a right to take such fact into consideration in determining the weight to be given to the evidence of such witness."

The instant contention is also a meritorious one. "It is a well established rule of law that a defendant or a witness cannot be impeached upon an immaterial statement." (*People v. Decker,* 310 Ill. 234, 244.) The instant instruction violates this fundamental principle of law, and it was especially harmful to certain of the defendants because of the nature of some of the answers they made when interrogated by Mr. Lavery.

The court, at the instance of the State, gave to the jury the following instruction:

"The jury is further instructed that the proof of the conspiracy charged in the indictment need not consist of direct testimony, but may be proved by what is known as circumstantial evidence.

"Circumstantial evidence in a criminal case is the proof of such facts and circumstances connected with, or surrounding the commission of the crime charged, as tend to show the guilt or innocence of the charge, and if the facts and circumstances shown by the evidence in this case are sufficient to satisfy the jury of the guilt of the defendants, or any two or more of them, beyond a reasonable doubt, then such evidence is sufficient to authorize the jury in finding such defendants guilty as in their judgment the facts warrant. The law demands a conviction wherever there is suffi-

cient legal evidence to establish the defendants' guilt beyond a reasonable doubt, and circumstantial evidence is legal evidence.''

This instruction is one commonly used by State's attorneys in conspiracy cases and it is based upon the theory of law that the State may prove its case by circumstantial evidence alone and it is drafted in a manner most favorable to the State. The giving of such an instruction is ordinarily proper, and the defendants cite it only in connection with their contention that the court erred in refusing to give to the jury two instructions offered by the defendants that state the well known principle of law that where a conviction for a criminal offense is sought upon circumstantial evidence alone the facts proved should exclude every reasonable hypothesis of innocence. (See *People v. Ahrling,* 279 Ill. 70, 80, and cases cited therein.) This vital principle of law was not stated in the said instruction of the State nor in any instruction given to the jury. Not only did the trial court refuse these two instructions of the defendants, but he struck out from a defendants' instruction that was given, a statement of this principle of law. The court erred in not giving one, at least, of the two instructions of the defendants and in modifying the one that was given. In view of the fact that the aforesaid instruction for the State was given, justice to the defendants required that one of their instructions on the same subject be also given.

At the request of the State the court gave to the jury ten instructions on the law of conspiracy. Each of these contains only abstract propositions of law and none of them attempts to apply the law, as stated therein, to the facts or circumstances in evidence. The defendants contend that these instructions, especially in view of the number given on the subject, tended to mislead the jury to the prejudice of the defendants. It is a general rule that ''instructions should be framed with reference to the circumstances of the

case on trial, and not be expressed in abstract and general terms, when such terms may mislead instead of enlightening a jury." (*Chicago & Alton R. R. Co. v. Utley,* 38 Ill. 410, 412.) The giving of instructions of this character is not to be commended, and trial courts are justified, under our practice, in refusing the same, and while it is true that it has been held that the giving of such instructions does not constitute reversible error if they are not calculated to mislead the jury, nevertheless, it is a settled rule that the giving of instructions which state merely abstract propositions of law and which might have a tendency to mislead the jury, is error. (See also the late case of *People v. Parks,* 321 Ill. 143.) We recognize the fact that in conspiracy cases it is a proper practice to give a few abstract instructions, if correctly drawn, bearing upon the subject of conspiracy, but after a careful consideration of the said ten instructions, we have reached the conclusion that there is substantial merit in the contention of the defendants that these instructions, especially in view of the number given, were apt to mislead the jury, to the prejudice of the defendants.

The defendants contend, and with some force, that the court erred in the giving, at the instance of the State, of several other instructions and in refusing several instructions offered by the defendants, but to refer to each of these specifically would extend this opinion to an unwarranted length.

The defendants contend that the trial court seldom ruled directly upon objections made by them; that instead of ruling directly he would proceed, in the hearing of the jury, to give his interpretation of the answer of the witness, sometimes the effect of the same and the law bearing upon the objection, and they strenuously argue that on many occasions the effect of this procedure was that the evidence given by the witness for the prosecution, and the effect of the same, was

emphasized, and the objection made to appear to the jury as trivial in its nature. A careful reading of the record shows that this contention is not without some merit. Where a trial court deems it necessary to state, for the benefit of the record, his understanding of the purpose and effect of testimony and his reasons for overruling the objection made, the safe and fair procedure is to call the counsel to the bar of the court and there, out of the hearing of the jury, make such statements as he deems proper, in passing upon the objection.

The defendants contend that while a clerk from the election commissioners' office was testifying on direct examination in reference to the custom and method of doing business and preserving the ballots, etc., in the office of the election commissioners, they made an objection to a certain question, and the court, instead of ruling directly on the objection, stated, in the hearing of the jury, ''That is his testimony, and that is very important testimony,'' and they insist that this statement was unwarranted and prejudicial. The statement was, of course, improper, but we do not find that the defendants made any objection to the same.

We are satisfied that the defendants have not had a fair and impartial trial and the judgment of the criminal court of Cook county, as to each defendant, is reversed and the cause remanded. In conclusion, we wish to state that nothing contained in this opinion should be considered as an intimation by this court that the State was not warranted, under the evidence, in prosecuting all of the defendants.

*Reversed and remanded.*

GRIDLEY and KERNER, JJ., concur.